IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:15cr50 |
| | ) | |
| DONNETTO ANTONIO DEANTONI | ) | |
| | ) | |
| Defendant. | ) | |

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on the Defendant's
Motion to Exclude All Evidence Related to Plea Negotiations, or
in the Alternative, Dismiss the Indictment. [Dkt. 23]
Specifically, the Defendant seeks to exclude "statements made
during the proffer session on December 12, 2014, statements
provided during debriefings session (sic) with attorneys for the
Government on January 14 and 15, 2015, Mr. DeAntoni's grand jury
testimony on January 15, 2015, and the draft plea agreement and
the statement of facts signed by Mr. DeAntoni on February 6,
2015." (Def.'s Mem. [Dkt. 24] at 1.)  For the reasons set forth
below, the Defendant's motion is denied in part and granted in
part.

## I. Background

On December 3, 2014, Department of Homeland Security
agents executed a search warrant on Defendant Donnetto Antonio
DeAntoni's ("Defendant" or "DeAntoni") residence. (*Id.*)  The

search warrant authorized the seizure of evidence relating to criminal copyright infringement, trafficking in counterfeit goods, conspiracy to commit money laundering, wire fraud, and smuggling goods from the United States.  (*Id.* at 2.) Similar search warrants were executed at three locations in California owned by or associated with Defendant's brother, Deonnetti DeAntoni.  (*Id.*)

On December 8, 2014, the Defendant retained the services of attorneys Marsh Halberg and Eric Nelson of Halberg Criminal Defense in Minnesota.  (*Id.*)  On December 9, 2014, Mr. Halberg and Assistant United States' Attorney ("AUSA") Alex Nguyen exchanged e-mails discussing the possibility of a video conference proffer session.  (*Id.*)  Defendant's attorney explained at the time that he "understand[s] there are no promises or guarantees from the Government," but he "hope[s] at a future time [the government] will consider a favorable [plea] offer and 5K motion."  (Def.'s Mot. Ex. 2 [Dkt. 24-2].)  AUSA Nguyen forwarded a copy of a proffer letter, and a proffer session took place via video conference on December 12, 2014. (Def.'s Mem. at 2.)  Eventually, a proffer letter was signed on December 18, 2014.  (*Id.* at 3.)

As part of the Defendant's continuing cooperation, the Government asked him to testify before the grand jury investigating him and his brother, and emailed his counsel on

2

December 12, 2014 to schedule a time to appear before the grand jury in January 2015.  (Def.'s Mot. Ex. 4 [Dkt. 24-4].)  In that same email, the Government expressed a desire to "discuss a resolution to the case" "between now and the GJ date."  (*Id.*)  On December 17, 2014, the government emailed defense counsel suggesting that "it may make sense" for the Defendant, a resident of Minnesota, "to testify [in the grand jury] and plead guilty during the same trip to avoid additional travel." (Def.'s Mot. Ex. 7 [Dkt. 24-7].)  Defense counsel was amenable to "[c]ombining tasks," so the Government followed up with a plea offer on December 23, 2014.  (Def.'s Mot. Ex. 6 [Dkt. 24-6], Ex. 11 [Dkt. 24-11].)  In response to that plea offer, defense counsel asked if they could "not do the plea so quickly", and asked to wait until the holidays had passed and the Defendant had time "to process all the nuances" of the proposed plea.  (Def.'s Mot. Ex. 12 [Dkt. 24-12].)  In that same e-mail, defense counsel stated that his client "will still fly in for the grand jury and also meet . . . in person to talk about possible refinements" to the proposed plea.  (*Id.*)

On January 15, 2015, the Defendant testified before the grand jury.  (Def.'s Mem. at 4.)  During his grand jury testimony, the following questions and answers took place:

> Q: You may refuse to answer any question if a truthful answer to the question would tend to incriminate you. Do you understand that?

3

```
A: Yes.
. . .
Q: Have you received any promises from the Government
in exchange for cooperating?
A: No
Q: Mr. DeAntoni, do you understand that anything you
say may be used against you by the grand jury or in a
later legal proceeding?
A: Yes.
```

(Gov. Ex. 1, G.J. Tr. [Dkt. 31-1] 2:25-3:14 (emphasis added).)

Mr. DeAntoni then went on to admit that he and his brother had knowingly sold millions of dollars' worth of pirated software. (*See id.* at 5:15-6:3.)  After the prosecutor had finished her examination of the Defendant, the grand jury questioned the Defendant directly.  One juror pressed the issue of whether the Defendant was aware he was selling an illegal product, and the Defendant responded "just bluntly, I covered my eyes and denied the obvious."  (*Id.* at 37:1-2.)

After Mr. DeAntoni's appearance before the grand jury, the Government and defense counsel continued to discuss the proposed plea agreement via email communication for several weeks.  (Def.'s Mem. at 4.)  On February 6, 2015, the Defendant signed a plea agreement and statement of facts.  (Def.'s Mot. Ex. 21 [Dkt. 24-21].)  That same day, defense counsel emailed the Government plea agreement signed by the Defendant and explained that defense counsel would sign the documents after he was admitted *pro hac vice* to the Eastern District of Virginia. (*Id.*)  Subsequently, a minor change was made to the plea

agreement, and the parties agreed that a new copy would be written and executed.  (Def.'s Mem. at 5.)  Before the new plea agreement could be executed, the Defendant terminated Mr. Halberg and Mr. Nelson as his attorneys on March 2, 2015. (Def.'s Mot. Ex. 36 [Dkt. 24-36].)  Defendant's new attorneys informed the Government that he no longer intended to plead guilty, and a plea hearing scheduled for March 5, 2015 was removed from the Court's docket.  (Def.'s Mem. at 6.)  On October 14, 2015, the grand jury returned a four count Indictment charging Mr. DeAntoni with Conspiracy, Criminal Infringement of a Copyright, Trafficking in Counterfeit Goods, and Conspiracy to Commit Money Laundering.  (*Id.*)

Defendant now moves pursuant to Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f), seeking to:

> exclude from trial all evidence related to, and all information obtained as a result of plea negotiations between the Accused and the Government, including, but not limited to, statements made during the proffer session on December 12, 2014, statements provided during debriefings session with attorneys for the Government on January 14 and 15, 2015, Mr. DeAntoni's grand jury testimony on January 15, 2015, and the draft plea agreement and the statement of facts signed by Mr. DeAntoni on February 6, 2015.

(*Id.* at 1.)  Defendant also requests that the Court dismiss the indictment if the grand jury which returned his indictment heard evidence against him which was inadmissible under Rule 410.

(*Id.* at 23.)  The Government contests the admissibility of the

Defendant's grand fury testimony generally, and the

admissibility of the defendant's proffer session interviews with

the Government for the limited purpose of impeachment.  (Gov.'s

Mem. in Opp. at 3, 10.)  The Government also contends that while

the indicting grand jury received only the transcript of the

Defendant's previous grand jury testimony, Rule 410 does not

apply to grand jury proceedings and dismissal of the indictment

would be inappropriate under Rule 410.  (*Id.* at 12.)

## II. Legal Standard

Federal Rule of Evidence 410 bars the admission of

"statement[s] made during plea discussions with an attorney for

the prosecuting authority."  Fed. R. Evid. 410(a)(4).  Federal

Rule of Criminal Procedure 11(f) incorporates Federal Rule of

Evidence, and provides that it shall govern "admissibility or

inadmissibility of a plea, plea discussion, and any related

statement."  Fed. R. Crim. P. 11(f).  "Because Rule 410 is an

exception to the general principle that all relevant evidence is

admissible at trial, its limitations are to be construed

narrowly."  *United States v. Stevens,* 455 F. App'x 343, 345 (4th

Cir. 2011).  A defendant's statements "do not constitute plea

discussions unless the defendant exhibits a subjective belief

that he is negotiating a plea, and that belief is reasonable

under the circumstances."  *United States v. Cowan*, 96 F.3d 1439,

6

1996 WL 921049, at *5 (4th Cir. 1996)(table)(internal quotations omitted).  Additionally, "the primary concern of the draftsmen [of Rule 410] was with fairly formal plea bargaining between the United States Attorney and counsel for defendant." *United States v. Stirling,* 517 F.2d 708,731 (2d Cir. 1978).

### III. Analysis

A.  Defendant's Grand Jury Testimony

The Defendant argues that his grand jury testimony should be excluded under Rule 410 because it took place at the urging of the Government and occurred while negotiations between his attorneys and the Government were ongoing.  (Def.'s Mem. at 20.)  However, given the context of the Defendant's grand jury testimony, the Defendant cannot plausibly maintain that he subjectively believed that he was negotiating a plea at that point in time, much less that such a belief was reasonable. Accordingly, the Court finds that under the facts presented here, the Defendant's grand jury testimony falls outside the realm of Rule 410.

Courts have been unwilling to find any grand jury testimony protected under Rule 410.  *See Stirling*, 571 F.2d at 731 (refusing to exclude grand jury testimony under Rule 410 because "[i]t simply cannot be said that [the defendant] was engaged in a 'discussion' with the Grand Jury in an attempt to obtain concessions from the Government in exchange for his

7

plea"); *United States v. Davis,* 617 F.2d 677, 683 (D.C. Cir. 1979)(refusing to exclude grand jury testimony under Rule 410 because that would not serve the rule's purpose of protecting "free and open discussion between the prosecution and the defense during attempts to reach a compromise"); *United States v. Nemetz*, No. 87-196-C 1987 WL 17543 at *4 (D. Mass. Sept. 21, 1987)(rejecting Rule 410 claim because "the statements were made to a grand jury rather than an attorney for the government" and Rule 410 "does not protect all statements made prior to the time that the defendant's plea is accepted by the Court"). *Stirling* and *Davis* contain dicta suggesting that Rule 410 could be read to protect grand jury testimony if the testimony took place after plea negotiations had begun but prior to the entry of a guilty plea.  However, neither court was willing to take the extra step of holding that Rule 410 protected grand jury testimony given after initiation of plea negotiations but before their conclusions.

Moreover, both *Stirling* and *Davis* dealt with an older version of Rule 410 which barred admission of any "statement made in connection with, and relevant to, any plea offers." Fed. R. Evid. 410 (1975).  In 1979, Rule 410 and Criminal Rule of Civil Procedure 11(e)(6) were amended to cover only those statements made "during plea discussions".  Fed. R. Evid. 410. These changes were brought about to narrow what "Congress

8

thought a too-broad view of the plea negotiation process."
*United States v. Marks,* 209 F.3d 577, 582 (6th Cir. 2000).  In
keeping with this narrower focus, courts have eschewed bright
line time limits on Rule 410's applicability in favor of a fact
specific inquiry into both the defendant's subjective
expectations "at the time of the discussion" and the
reasonableness of those expectations "given the totality of the
objective circumstances." *United States v. Merrill*, 685 F.3d
1002, 1013 (11th Cir. 2012)(quoting *United States v. Robertson*,
582 F.2d 1356, 1366 (5th Cir. 1978).

        Based on the record here, the Defendant cannot
plausibly maintain that he exhibited a subjective belief that he
was negotiating a plea when he testified before the grand jury,
and any such subjective belief would certainly have been
unreasonable.  First, the nature of the grand jury proceeding
itself advises against finding that the Defendant had a
subjective and objectively reasonable belief that he was
negotiating a plea agreement while testifying there.  The grand
jury is "an investigative body acting independently of either
prosecuting attorney or judge." *United States v. Williams,* 504
U.S. 36, 49 (1992).  All grand jury proceedings are recorded,
and attorneys may not accompany witness-clients into the grand
jury room. *See* Fed. R. Crim. P. 6(e)(1); Fed. R. Crim. P. 6(d).
The grand jury exists to gather evidence of crime and to

determine whether there are grounds for criminal charges.  *See*
*United States v. Mandujano,* 425 U.S. 564, 573 (1976).  Federal
Rule of Evidence 410 was designed to foster "free communication"
and provide "security against having an offer of compromise or
related statement admitted in evidence."  Fed. R. Evid. 410,
Advisory Committee's Notes.  The grand jury, an independent
investigative body where everything is on the record, is almost
uniquely ill-suited to serving as a venue for inadmissible,
confidential plea negotiations between the prosecuting authority
and the defendant.  It is not surprising, then, that courts have
routinely declined to extend Rule 410 protection to statements
made before a grand jury.  *See Stirling*, 571 F.2d at 731; *Davis,*
617 F.2d at 683; *Nemetz*, 1987 WL 17643 at *4.  The Court fails
to see how the Defendant could have reasonably believed he was
negotiating a plea "at the time of the discussion" while
testifying, on the record and without his attorney present,
before the grand jury.  *Merrill*, 685 F.3d at 1013.

Nor was the Defendant in any doubt as to the nature of
the grand jury proceeding.  The Defendant's grand jury testimony
clearly demonstrates that he was aware anything he said before
the grand jury could be used against him by the grand jury or at
later criminal proceedings.  At the grand jury proceeding, the
prosecutor asked the Defendant, "Have you received any promises
from the Government in exchange for cooperating?"  (Gov. Ex. 1,

G.J. Tr. 3:8-9.)  The Defendant responded, "[n]o."  (*Id.* at
3:10.)  Immediately after that, the Prosecutor asked, "Mr.
DeAntoni, do you understand that anything you say may be used
against you by the grand jury *or in a later legal proceeding*?"
(*Id.* at 3:11-13 (emphasis added).)  The Defendant responded,
"[y]es."  (*Id.* at 3:14.)  The Defendant clearly acknowledged
that his testimony before the grand jury was not part of a
negotiation or a *quid pro quo* arrangement with the Government.
He further clearly acknowledged and accepted that his testimony
was being recorded and could be used against him either by the
grand jury or at a later criminal proceeding.  The Defendant's
own testimony before the grand jury therefore indicates that he
did not believe his testimony in front of the grand jury was
part of any negotiations towards a plea agreement.  At least
where the nature of the grand jury proceeding is explained to
the defendant and the defendant proceeds to testify before the
grand jury of his own volition, the defendant cannot maintain
that he has "exhibited a subjective belief that he [was]
negotiating a plea" when he testified before the grand jury, nor
could any such belief be reasonable.  *Cowan*, 96 F.3d  at 1439.

      This result is in accord with both Rule 410's goal of
promoting the "free and open discussion between the prosecution
and the defense during attempts to reach a compromise," *Davis,*
617 F.2d at 683, and the draftsmen's primary concern of "fairly

formal plea bargaining between the United States Attorney and counsel for defendant," *Stirling,* 517 F.2d at 731.  Holding that a defendant's testimony before the grand jury is not protected by Rule 410 even where that testimony occurs prior to execution of a finalized plea agreement poses little risk of chilling free and open negotiations between prosecuting attorneys and defendants.  In a typical case, when a defendant considers appearing before a grand jury as part of a plea bargain, some sort of immunity agreement or other "plea bargain agreement is usually reached prior to the defendant's testimony before the grand jury." *Nemetz,* 1987 WL 17643 at *4 (citing *Davis,* 617 F.2d at 683; in turn citing *Stirling*, 571 F.2d at 732).

It is the defendant who is best placed to avoid the negative ramifications of testifying in front of the grand jury prior to the entry of a guilty plea or execution of an immunity agreement.  As the Defendant here was advised, if he did not want to testify before the grand jury prior to working the details of a plea bargain or immunity agreement, he could have "refuse[d] to answer any question if a truthful question would tend to incriminate [him]." (Gov. Ex. 1, G.J. Tr. 2:25-3:2.) The Defendant was likewise advised that he could terminate his testimony before the grand jury and talk to his lawyers at any time if he wanted to do so. (*Id.* at 3:23-25.)  Allowing the admission of a defendant's grand jury testimony will not

12

undermine the ability of prosecutors and defendants to negotiate openly and honestly, even where that testimony took place prior to execution of a plea agreement.  Defendants remain free to invoke their Fifth Amendment rights and refuse to testify before a grand jury until they finalize a plea agreement or negotiate some other immunity deal limiting the use of their grand jury testimony.

The Defendant argues that his appearance before the grand jury was compelled by the Government "as a condition of continued plea negotiations." (Def.'s Rep. at 7.)  If the prosecuting attorney were to require a defendant to testify before the grand jury as a prerequisite to continued plea negotiations, it would raise serious concerns about the voluntariness of a defendant's testimony, and may render the testimony before the grand jury coerced.  However, no such situation appears here.  The record reveals that the Defendant's attorneys suggested proceeding with the Defendant's grand jury testimony prior to execution of a plea agreement.  (*See* Def.'s Ex. 12 [Dkt. 24-12].)  The prosecuting attorneys were amenable to this idea, but they never expressed that the Defendant needed to appear before the grand jury on any specific date or prior to the execution of a guilty plea as a perquisite to continued plea negotiations.  (*See* Def.'s Ex. 13 [Dkt. 24-13].)

The Defendant argues that he was obliged to appear

13

before the grand jury at this time because a draft plea
agreement under consideration at the time of the Defendant's
grand jury testimony included a clause providing, "[t]he
defendant agrees to testify truthfully and completely at any
grand juries, trials, or other proceedings." (Draft Plea
Agreement § 10(a) [Dkt. 33-1].) When interpreting a plea
agreement or determining whether a plea agreement has been
formed, the Court draws upon the law "pertaining to the
formation and interpretation of commercial contracts." *United
States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986). The draft
plea agreement would have required the Defendant to cooperate
fully and testify truthfully at a grand jury or any other
proceeding once the parties finalized and executed the plea
agreement. However, the draft agreement was never executed.
Accordingly, the draft plea agreement was not a binding
agreement on either the Government or the Defendant. It was, as
its name implies, a draft, subject to further negotiation. The
Defendant was not required to appear before the grand jury when
he did so simply because the draft plea agreement would have
required the Defendant to testify truthfully and cooperate fully
once the contemplated plea agreement was executed.

     Finally, even if the Defendant were able to show that
he subjectively believed he was negotiating a plea deal as he
was testifying before the grand jury and that this belief was

objectively reasonable, his testimony definitively establishes
that he waived any Rule 410 protection before the grand jury.
"Absent some affirmative indication that the agreement was
entered into unknowingly or involuntarily, an agreement to waive
the exclusionary provisions of the plea-statement Rules is valid
and enforceable." *United States v. Mezzanatto*, 513 U.S. 196,
210 (1995). "A knowing waiver is one 'made with a full
awareness of both the nature of the right being abandoned and
the consequences of the decision to abandon it." *United States
v. Young*, 223 F.3d 905, 909 (8th Cir. 2000)(quoting *Moran v.
Burbine*, 475 U.S. 412, 421 (1986)). In *Young*, the Eighth
Circuit held that a waiver need not reference Rule 410 by name
or "include a rote recitation of the rules" in order to be a
knowing and voluntary waiver of Rule 410's exclusionary
provisions. *Id.* at 911.

Here, the Defendant was asked "Mr. DeAntoni, do you
understand that anything you say may be used against you by the
grand jury *or in a later legal proceeding*?" (Gov. Ex. 1, G.J.
Tr. at 3:11-13 (emphasis added).) Mr. DeAntoni responded,
"[y]es." (*Id.* at 3:14.) Although the Government's attorney did
not invoke Rule 410 by name, the attorney clearly explained that
the Defendant was waiving any right to prevent the use of his
grand jury testimony against him by either the grand jury or at
a later legal proceeding. The right to prevent later use at a

15

legal proceeding is the *sine qua non* of Rule 410.  The Court concludes that the Defendant was fully aware of the nature of the right he was waiving, and the consequences of the decision to abandon it.  Accordingly, even if Rules 410 and 11(f) were construed to cover the Defendant's voluntary grand jury testimony, the Defendant knowingly and voluntarily waived the exclusionary provisions of those rules with respect to his grand jury testimony.

The Court therefore finds that the Defendant's voluntary grand jury testimony does not fall within the scope of Federal Rule of Criminal Procedure 11(f) or Federal Rule of Evidence 410 notwithstanding the fact that the testimony took place after the initiation of plea negotiations and before their conclusion.  The Court further finds that even if Rules 410 and 11(f) were applicable to this context, the Defendant's grand jury testimony included a knowing and voluntary waiver of the exclusionary provisions of those Rules.  Accordingly, the Court denies the Defendant's motion to exclude with respect to the Defendant's grand jury testimony.

B.    Government Use of Defendant's Interviews for Impeachment Purposes

The Defendant also moves to exclude any reference to his statements made during voluntary interviews with the Government pursuant to Federal Rule of Evidence 410 and Federal

16

Rule of Criminal Procedure 11(f).  Prior to the first video conference between the Defendant and the prosecuting attorneys on December 12, 2014, the Government sent the Defendant a standard proffer letter laying out the proposed terms of that meeting.  That proffer letter provided that the Defendant's statements would not be used in the Government's case-in-chief, but could be used for cross-examination or rebuttal if the Defendant testified inconsistently at trial.  (Gov.'s Mem. Ex. 2 at 1.)  It further provided that if Mr. DeAntoni's proffer session with the Government was "construed to have been an instance of compromise negotiations or plea discussions, [the Defendant] knowingly and voluntarily waives all rights [the Defendant] has pursuant to Federal Rules of Evidence 408 and 410 and Federal Rule of Criminal Procedure 11(f) that would otherwise prohibit the use against [the Defendant] of statements made during such negotiations or discussions." (*Id.* at 2.)  The Defendant and his attorney at the time, Mr. Halberg, did not sign and return the proffer agreement until December 18, 2014, six days after the video conference with the prosecuting attorneys had taken place.

     Proffer agreements, like plea agreements, are interpreted primarily according to the principles of contract law while holding the Government "to a greater degree of responsibility than the defendant (or possibly than would be

either of the parties to a commercial contract) for imprecisions or ambiguities." *United States v. Lewis*, 633 F.3d 262, 269 (4th Cir. 2011)(quoting *United States v. Wood*, 378 F.3d 342, 348 (4th Cir. 2004)).  Additionally, when the contract involves the waiver of rights by a defendant and concerns about "public confidence in the fair administration of justice," agreements between prosecuting attorneys and a defendant are analyzed with special scrutiny.  *United States v. Carter,* 454 F.2d 426, 428 (4th Cir. 1972).  Because the proffer letter, like a plea agreement, involves the waiver of certain protections and raises concerns about fairness in interactions between prosecuting attorneys and the public, the Court will interpret the proffer letter according to the same "amalgam of constitutional, supervisory, and private law concerns" that governs the interpretation of plea agreements.  *Id.*

     "One of contract law's fundamental doctrines is that there can be no agreement unless there is a 'meeting of the minds.'"  *United States v. White*, No. 14-4678, 2015 WL 6122990, at *3 (4th Cir. Oct. 19, 2015)(citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).  "Where 'substantial confusion' calls into mind whether there has been such a meeting of the minds over a plea bargain, there is no valid agreement to be enforced."  *Id.* (quoting *Houmis v. United States*, 558 F.2d 182, 183 (3d Cir. 1977)).  Here, the proffer letter's language

18

is unambiguous in contemplating one specific interview session
with repeated reference to "*the* interview session." (Gov.'s
Mem. Ex. 2 (emphasis added).)  However, the proffer letter does
not contain any language referencing subsequent interview
sessions, prior interview sessions, all interview sessions, or
referring to any specific interview session by date.  The
proffer letter is therefore ambiguous as to *which* interview
session the parties contemplated.  Generally, when a proffer
letter is properly executed immediately prior to an interview or
proffer session, the proffer letter is held to be effective with
respect to that interview or proffer session.  *See, e.g., United
States v. Smith*, 770 F.3d 628, 639-40 (7th Cir. 2014)(waiver was
effective where defendant signed proffer letter "prior to the
beginning" of his proffer interviews); *United States v. Adejumo*,
772 F.3d 513, 525 (8th Cir. 2014)(waiver was effective where
proffer letter was signed "prior to the session," after review
by defendant, his counsel, and explanation by the prosecuting
attorney); *United States v. Parra*, 302 F. Supp. 2d 226, 231
(S.D.N.Y. 2004)(waiver effective where defendant "signed the
Proffer Agreement at the initial session, and initialed the same
Agreement at the two subsequent proffer sessions").  The proffer
letter at issue here was not signed and returned until December
18, 2014, well after the proffer session had already taken
place.  Accordingly, the Court finds that the proffer letter is

fatally ambiguous as to which proffer session or interview it contemplated.  Simply put, the Government cannot clearly establish whether the Defendant believed the proffer letter applied to the interview which took place on December 12, 2014, prior to execution of the proffer letter; the interview sessions which took place after execution of the proffer letter; or all of the defendant's interviews with the prosecuting attorneys.

The Court's supervisory role in regulating plea negotiations counsels this result.  Whereas the defendant is best placed to avoid the potential negative ramifications of testifying before a grand jury without an immunity agreement, the prosecuting attorney is best placed to avoid issues arising from ambiguity in proffer agreements.  If the prosecuting attorney wants to be sure that the proffer agreement applied to any of the specific proffer sessions or interviews, they need only either ensure the defendant executes the agreement at the beginning of the proffer session or include clear language explaining that the proffer agreement applies to "all interviews" or referencing specific interviews by date.  Because the proffer letter must be construed severely against the Government, and its language regarding the extent of the waiver is too vague to demonstrate a meeting of the minds, the Court finds the proffer letter was not effective.  Thus, the contents of any proffer sessions or interviews between the Defendant and

20

the prosecuting attorneys which were conducted for the purpose of negotiating a plea agreement must be excluded under Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f).

C.   Request for Dismissal of Indictment

Finally, the Defendant requests dismissal of the indictment if the indicting grand jury saw any evidence which was inadmissible under Rules 410 and 11(f).  Certainly dismissal of the indictment can be an appropriate remedy where a defendant's immunized statement, or evidence derived from an immunized statement, makes its way into a grand jury proceeding against the defendant.  *United States v. Harris*, 973 F.2d 333, 338 (4th Cir. 1992); *United States v. Pielago,* 135 F.3d 703, 707-08 (11th Cir. 1998).  The Defendant cites to *United States v. Rasco*, 262 F.R.D. 682 (S.D. Ga. 2009) as support for the proposition that an indictment ought to be dismissed if the grand jury was presented with statements which would have been inadmissible at trial under Rule 410.  However, *Rasco* involved a situation where the defendant's first interview with the prosecuting attorneys was not governed by any written agreement, but his second interview session with the prosecuting attorneys was covered by a written agreement granting limited immunity against direct use of his testimony.  *Rasco*, 262 F.R.D. at 690-91.  Insofar as *Rasco* stands for the proposition that Federal

21

Rule of Evidence 410 applies to grand jury proceedings or requires automatic dismissal of indictments returned by a grand jury which was presented with statements protected by Federal Rule of Evidence 410, this Court disagrees.

"[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988).  While Rule 410 creates, "in effect, a privilege of the defendant," it is not a constitutional right.  *Mezzanatto*, 513 U.S. at 205.  Because Rule 410 does not create a constitutional right, dismissal of the indictment is appropriate only if "it is established that the violation substantially influenced the grand jury's decision to indict." *Bank of Nova Scotia*, 487 U.S. at 251 (quoting *United States v. Mechanik*, 475 U.S. 66, 78, (1986)(O'Connor, J., concurring)).  The Court has ruled above that the Defendant's testimony before the earlier grand jury was not protected by Rule 410.  Given the content of that testimony, the Court finds that even if the indicting grand jury was presented with any statements protected by Rule 410, those protected statements could not possibly have substantially influenced the grand jury's decision to indict.  Any error was certainly harmless.  Accordingly, the Court denies the Defendant's motion to dismiss the indictment.

## IV. Conclusion

For the foregoing reasons, the Court denies the Defendant's Motion to Exclude with respect to the Defendant's grand jury testimony and denies the Defendant's Motion to Dismiss the indictment.  However, the Court grants the Defendant's Motion to Exclude with respect to the contents of Defendant's interviews and proffer sessions conducted for the purpose of negotiating a plea agreement.  An appropriate order will issue.


/s/

_____

March  15, 2016                    James C. Cacheris
Alexandria, Virginia        UNITED STATES DISTRICT COURT JUDGE